UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
LEWIS L. ATKINS,                        :
                     Plaintiff,         :
                                        :    11 Civ. 4939 (DLC)
           -v-                          :
                                        :    OPINION AND ORDER
JAN BETH BOHRER a/k/a JAN BOYER,        :
                                        :
                     Defendant.         :
                                        :
----------------------------------------X

APPEARANCES:

For plaintiff:
Lewis L. Atkins, proceeding pro se
16 Shelley Terrace
West Orange, NJ 07052

For defendant:
Richard Henry Dolan
Jeffrey M. Eilender
Vitali S. Rosenfeld
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004


DENISE COTE, District Judge:

        Plaintiff Lewis L. Atkins ("Atkins") has brought claims of

(1) elder abuse and harassment and (2) defamation and slander,

against Jan Beth Bohrer ("Bohrer").  Bohrer filed a motion to

dismiss the First Amended Verified Complaint ("Amended

Complaint") on November 8, 2011.  For the following reasons,

Bohrer's motion is granted in part.

BACKGROUND

The following facts are taken from Atkins's Amended Complaint or documents integral to it unless otherwise noted, and are taken to be true for purposes of this motion. LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009). The Court has not considered the exhibits submitted by both parties that are not integral to the Amended Complaint, having not been requested by the parties to convert this motion to one for summary judgment and declining to do so sua sponte. See Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011). Atkins, an 85-year old resident of New Jersey lived for approximately twenty-one years with Lynn G. Bohrer ("Lynn") in a New York City residence. During this time, Lynn's son, Stephen Bohrer, lived outside New York City. Bohrer, a New York resident, is Lynn's daughter. For much of the time that Atkins and Lynn lived together, Lynn and Bohrer were estranged.

In September 2009, Lynn underwent treatment for a malignant tumor, the emotional experience of which caused her to attempt to reconnect with Bohrer. Lynn amended her will to include Bohrer. After a surgical procedure, Lynn developed an infection that caused her to return to hospitalized care between December 2009 and January 2010. In early 2010, Bohrer tried to convince Atkins that Lynn was not competent to manage her own affairs. On April 25, Lynn sent a letter to her attorney instructing him

to rescind her grant of power of attorney to Bohrer, and to replace her with Atkins.

In August 2010, Lynn was diagnosed with an illness and was hospitalized to address the condition as well as an infection. During this time, Bohrer and Lynn's relationship soured further and Lynn threatened to remove Bohrer from her will.  Bohrer "went ballistic" upon hearing this.  Sometime during this period, Lynn called her attorney to inform him that he should amend her will and trust documents to remove references to Bohrer, including removing her as co-trustee and co-executor of her estate.  The attorney did not comply with this request, and instead attempted to have Lynn consent to engaging additional counsel to help verify Lynn's competency and, once satisfied, carry out her requests.  It appears from the Amended Complaint that Lynn never agreed to this, or, at least, that her attorney did not become comfortable enough with her competency at that point to amend her will and trust documents.

Starting in late August 2010, Bohrer began telling Lynn "and others," including Ilene Wechter, Barbara Koplin, and Penelope Weld that Atkins was a liar, and was stealing Lynn's money and jewelry.  In September, Bohrer spoke to Lynn's attorney, making the same accusations against Atkins.  Bohrer also questioned staff in the building where Atkins and Lynn lived if Atkins had been removing items from the home, and told

the apartment management staff that Atkins have been stealing Lynn's money and jewelry.  Also in September, Atkins overheard some nurses at the hospital where Lynn was staying saying that Bohrer had told them that she, and not Atkins, was Lynn's healthcare agent, despite a document that had designated Atkins as Lynn's primary agent, and Bohrer as her alternate agent. Atkins believes that Bohrer told them that he forged Lynn's health care proxy document.  Bohrer also questioned Lynn's competency to appoint Atkins as her healthcare proxy in the presence of nurses at the hospital.  When Atkins wrote Bohrer a letter about what he overheard, Bohrer replied in writing that he had misunderstood the nurses; she had merely asked the nurses who was on file as Lynn's agent, and acknowledged that Atkins was the primary agent.

On September 14, Lynn signed a document stating her intention that Bohrer be removed from her will and trust documents, with the benefits of the estate that would have gone to Bohrer instead accruing to her son.  There is no indication that the attorney acted on this written request.  Lynn instructed the staff of the building where she lived to not permit Bohrer to enter her apartment.

On October 14, 2010, Lynn's attorney visited her in the hospital to discuss accusations Bohrer had made to him that Atkins was stealing Lynn's money and jewelry.  He spoke with

Lynn privately at first, and then spoke jointly with Lynn and
Atkins about ways to prevent Bohrer from leveling such
accusations at Atkins.  At that meeting, Lynn explained to her
attorney that she trusted Atkins and did not want Bohrer
involved in her affairs.  Atkins wrote a letter to Lynn's
attorney on October 18 detailing the harassment that Bohrer had
directed at him and asking the attorney to not be swayed by
Bohrer in having Lynn declared incompetent to manage her own
affairs.

At unspecified times, Bohrer has followed Atkins in public
places shouting obscenities at him and accusing him of stealing
Lynn's jewelry and money.  These incidents were observed by
others.  Bohrer also threatened Atkins when they had an argument
about whether Lynn should be placed in a hospice.  Atkins became
concerned that if Bohrer entered the home he shared with Lynn,
Bohrer would hurt him or make false accusations of abuse against
Atkins.  Sometime in late 2010, Bohrer's actions caused Atkins
to seek the help of a psychiatrist, and he remains under a
psychiatrist's care.

On January 5, 2011, Lynn passed away.  Bohrer, as co-
trustee of the Lynn G. Bohrer Revocable Trust of 2004, along
with co-trustee Lester Wohl ("Wohl"), filed a complaint against
Atkins in Massachusetts Superior Court (the "Superior Court")
alleging that a December 2010 deed by which Atkins claims to now

have ownership of Lynn's former Stockbridge, Massachusetts property (the "Stockbridge House") is void because it was forged, improperly notarized, or executed under undue influence. Connected with that litigation, Atkins agreed to not remove any property from the Stockbridge House. Bohrer is also co-executor of Lynn's estate.

Atkins continues to believe that Bohrer is a threat to his safety. He believes that Bohrer has requested others, including her attorney and the Stockbridge, Massachusetts Police Department ("SPD"), to follow Atkins and track his activities in 2011. The report from the SPD, which Atkins attaches to his Amended Complaint, states that in June 2011, Bohrer requested that the SPD check to be sure Atkins was complying with his agreement not to remove property from the Stockbridge House. The SPD visited the Stockbridge House twice on June 19, and did not see Atkins removing property. Atkins then complained to the SPD that Bohrer had texted him, and that he had seen her attorney's car in front of the Stockbridge House, and that he believed this was harassment. After the SPD told Bohrer that Atkins had suggested that her actions constituted harassment, she agreed to refrain from contacting him. The SPD did not get any further involved in the matter, recognizing that it was a civil matter.

6

On June 20, 2011, Atkins filed a complaint of harassment and seeking a restraining order in the Southern Berkshire, Massachusetts District Court ("Berkshire Court") pursuant to Mass. Gen. Laws ch. 258E.  The subject of that complaint was the alleged harassment that took place in fall 2010, before Lynn's death, and in June 2011, in connection with the Stockbridge House.  The complaint requested that Bohrer be prevented from (1) abusing or harassing Atkins by attempting or threatening physical harm; (2) intimidating, abusing or causing damage to Atkins; (3) violating various state criminal statutes prohibiting battery, rape, stalking, and harassment; (4) contacting Atkins; and (5) being near Atkins's residence and workplace.  A temporary harassment prevention order ("TRO") was issued that same day, ordering the above relief, except that it did not specify a workplace for Atkins that Bohrer was ordered to avoid.  The TRO further stipulated that Bohrer remain at least 100 yards from Atkins.  At a hearing on June 30 before the Berkshire Court, Atkins, represented by counsel, argued that Bohrer's activity constituted harassment.  The Berkshire Court found on the record that Bohrer's activities did not constitute harassment, or of the type of "willful and malicious conduct" which would qualify for a harassment claim under Massachusetts state law.  Therefore, the Berkshire Court denied Atkins's

request for such an order and allowed the TRO to lapse that
afternoon.

Atkins claims that Bohrer's defamation has "diminished
[his] standing and reputation in the community" and "affected
[his] security business."  Specifically, he says that the
disclosure of the litigation that Bohrer commenced against him
has damaged his business and caused a loss of income.

The original complaint in this case was filed on July 19,
2011.  Bohrer filed a motion to dismiss on August 9, and in an
Order dated August 31, Atkins was given the opportunity to amend
his complaint in response to that motion or file an opposition.
Atkins filed the Amended Complaint on September 26.  Bohrer
filed the instant motion to dismiss the Amended Complaint on
November 8, and it was fully submitted on December 19.


DISCUSSION

Atkins brings two claims, each of which he argues entitles
him to different relief.  In connection with his claim for
"elder abuse and harassment," Atkins requests a temporary or
permanent injunction preventing Bohrer from (1) abusing or
harassing Atkins by attempting or threatening physical harm; (2)
intimidating, abusing, or causing damage to Atkins; (3)
contacting Atkins by any means, directly or through another, and
remaining more than 100 yards from Atkins; and (4) remaining

away from Atkins's properties in New Jersey and Massachusetts.
In connection with his defamation claim, Atkins requests
$5,000,000 in damages, as well as any attorney fees and costs.

I.   Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading
must contain a 'short and plain statement of the claim showing
that the pleader is entitled to relief.'"  Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  To survive a motion
to dismiss, "a complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible
on its face."  Id. (citation omitted).  Applying this
plausibility standard is "a context-specific task that requires
the reviewing court to draw on its judicial experience and
common sense."  Id. at 1950.

When considering a motion to dismiss under Rule 12(b)(6), a
trial court must "accept all allegations in the complaint as
true and draw all inferences in the non-moving party's favor."
LaFaro, 570 F.3d at 475.  Moreover, pleadings filed by pro se
plaintiffs are to be construed liberally.  Chavis v. Chappius,
618 F.3d 162, 170 (2d Cir. 2010) (citation omitted).  A
complaint must do more, however, than offer "naked assertions
devoid of further factual enhancement," and a court is not
"bound to accept as true a legal conclusion couched as a factual
allegation."  Iqbal, 129 S. Ct. at 1949-50.

Accordingly, a court may disregard "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Id. at 1940. In determining the adequacy of a complaint "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

II. Atkins's Elder Abuse and Harassment Claim Is Precluded by Prior Litigation.

Bohrer contends that Atkins's elder abuse and harassment claim is barred by res judicata. Claim preclusion, one aspect of res judicata, bars relitigation in a later lawsuit of claims that a plaintiff did bring or could have brought in her earlier lawsuit. "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." O'Connor v. Pierson, 568 F.3d 64, 69 (2d Cir. 2009) (citation omitted). Therefore, this Court looks to Massachusetts law to determine the preclusive effect of the Berkshire Court judgment. Notably, Massachusetts law, like New York law, "applies the same analytical factors in deciding claim preclusion questions" as federal common law. Herman v. Meiselman, 541 F.3d 59, 62 n.6 (1st Cir. 2008) (Massachusetts law); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (New York law).

Under Massachusetts law, "[c]laim preclusion prevents the relitigation of all claims that a litigant had the opportunity and incentive to fully litigate in an earlier action." Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008) (citation omitted). The three elements of claim preclusion are "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the causes of action; and (3) a prior final judgment on the merits." Id. (citation omitted). "When assessing the second element of claim preclusion, Massachusetts courts find causes of action to be identical if they derive from the same transaction or series of connected transactions." Id. (citation omitted). Claim preclusion "does not apply when the court which heard the first action did not have subject matter jurisdiction (or was limited by some other formal barrier) over the subject in the second action." Bradford v. Richards, 417 N.E.2d 1234, 1235 (Mass. App. Ct. 1981).

Claim preclusion bars the elder abuse and harassment claim. There is no dispute that the parties, Atkins and Bohrer, are identical. It is also undisputed that the cause of action Atkins filed in the Berkshire Court, harassment, arose from the same facts that underlie the elder abuse and harassment claim -- the alleged verbal abuse Bohrer inflicted on Atkins in 2010, and the continuation of that abuse and alleged stalking activity that occurred in 2011.

11

The parties disagree as to whether the Berkshire Court's June 30 denial of Atkins's harassment claim amounted to a final judgment on the merits.  Atkins claims that when the Berkshire Court judge stated that Atkins could, "if the circumstances change, come right back to court," this precluded a finding of finality.  This argument takes this statement out of context.  The Berkshire Court dismissed Atkins's complaint and closed the case, the judge having said, just a bit before the statement Atkins quotes, that "I can't make a finding that there's been a sufficient showing of the willful and malicious type [of] conduct which would satisfy the statute" for a claim of harassment in Massachusetts.  Nowhere in the judge's statements is it suggested that the order to dismiss is being made without prejudice.  Rather, the judge was merely stating that if Bohrer did anything new that Atkins felt constituted harassment -- "if the circumstances change" -- then he could bring a new claim in Massachusetts court based on those new facts.

Atkins also contends that a section of the statute under which he brought his claim of harassment in the Berkshire Court, Mass Gen. Laws ch. 258E, provides a defense to claim preclusion. Chapter 258E is a public safety law enacted in 2010 that allows individuals suffering from harassment to seek emergency <u>ex parte</u> relief, in the form of a restraining order and/or damages, followed by a court hearing no more than ten days later to

consider the merits of continuing relief.  Mass Gen. Laws ch.
258E §§ 1-5.  "Harassment" includes "acts of willful or
malicious conduct . . . with the intent to cause fear,
intimidation, abuse or damage to property."  Id. § 1.  A
violation of a temporary or permanent order issued under Chapter
258E is a criminal offense.  Id. § 4.  Section 3(g) of Chapter
258E provides that "[a]n action commenced under this chapter
shall not preclude any other civil or criminal remedies."
Neither of the parties pointed to case law or other sources
interpreting § 3(g), nor could the Court identify any.  But the
intent of § 3(g) is clear from its face: to allow individuals
access to emergency relief without fear that doing so may
preclude other relief they may seek from a defendant.

      Accordingly, Atkins claims that his instant elder abuse and
harassment claim cannot be precluded by the Berkshire Court
action.  Atkins's argument fails; although § 3(g) allows a
claimant to pursue "other remedies," the remedies he seeks in
connection with his elder abuse and harassment claim are
identical to those sought in the Berkshire Court action.  In
this action, Atkins seeks the exact same injunction preventing
Bohrer from abusing, harassing, intimidating, damaging,
contacting, or approaching Atkins or his properties as he did in
the earlier action, and has not added any new requests for
relief under this claim.  In fact, it appears that Atkins lifted

language directly from Massachusetts state documents in crafting
his pleadings in this action.  By its terms, § 3(g) does not
negate the principle of claim preclusion such that a litigant
would be allowed to pursue the same relief in a second action
after it had been denied in a first proceeding under Chapter
258E.[1]

Atkins also argues that this claim should not be precluded
because he had considered litigation against Bohrer as early as
December 2010, but was only finally able to file this complaint
later.  Whether or not this action was contemplated before the
Berkshire Court action is of no moment, because both actions
concern the same underlying facts -- alleged harassment that
took place in fall 2010 and 2011 -- and regardless of his
initial planning, Atkins actually chose to pursue his claim
first on an expedited basis in the Berkshire Court.  The final
decision rendered in that case dismissed his harassment claim
and denied the injunctive relief he seeks again in this action.

Lastly, even if the doctrine of claim preclusion did not
apply here, there is no claim for "elder abuse" or "elder
harassment" under New York law or federal common law.  See

---

[1]     The case law cited by Atkins in support of this argument is
not relevant.  Neither cases that make only general statements
that the principle of res judicata can be limited, nor cases
describing the limiting effect of other statutes unrelated to,
and not resembling, § 3(g) of Chapter 258E, provide any guidance
for any limitation § 3(g) may have on the preclusive effect of
the Berkshire Court action.

Carvel v. Ross, No. 09 Civ. 0722 (LAK)(JCF), 2011 WL 856283, at
*11 (S.D.N.Y. Feb. 16, 2011), adopted by Carvel v. Ross, No. 09
Civ. 0722 (LAK), 2011 WL 867568 (S.D.N.Y. Mar. 11, 2011);
Gilbert v. Gilbert, No. 02 Civ. 3728 (DLC), 2003 WL 22790940, at
*2 (S.D.N.Y. Nov. 25, 2003).  Nor did a search of Massachusetts
and First Circuit case law identify such a claim in
Massachusetts.  Therefore, this claim should be further
dismissed as not cognizable under the laws of any jurisdiction
that may be relevant here.

III. Atkins Has Stated a Claim for Slander.

        Reading his Amended Complaint broadly, Atkins alleges
several different instances of defamation.  These include
Bohrer's (1) accusations to named individuals, including Ilene
Wechter, Barbara Koplin, and Penelope Weld, that Atkins was a
thief and a liar; (2) accusations to the apartment management
staff that Atkins was stealing Lynn's money and jewelry; (3)
accusations to hospital staff that Atkins forged Lynn's
healthcare proxy; (4) accusations to "others" that Atkins was a
thief and a liar; (5) "defamatory statements" to Flo Doukova and
Michiyo Nakaya; (6) accusations to Lynn, Wohl, and Lynn's son
and attorney, that Atkins was stealing Lynn's money and jewelry;
and (7) litigation against Atkins concerning Lynn's estate and
trust.  Although Atkins claims to have suffered harm from per se
defamation, he also claims that because he has been forced to

disclose the litigation instituted against him by Bohrer because
of regulations covering his security business, he has suffered
actual damages.

With the possible exception of the litigation Bohrer
commenced against him in Massachusetts, Atkins has not made any
allegations of defamation by written word in his Amended
Complaint.[2]  Therefore, his claim is one of slander.  In New
York, the elements of slander are:

> (i) a defamatory statement of fact, (ii) that is
> false, (iii) published to a third party, (iv) "of and
> concerning" the plaintiff, (v) made with the
> applicable level of fault on the part of the speaker,
> (vi) either causing special harm or constituting
> slander per se, and (vii) not protected by privilege.

Albert v. Loksen, 239 F.3d 256, 265-66 (2d Cir. 2001).  The
parties have not argued which state's law applies here, but even
if the law of Massachusetts, and not New York, were to apply,
the elements of a slander claim are largely identical.  See
Driscoll v. Board of Trustees of Milton Academy, 873 N.E.2d
1177, 1187 (Mass. App. Ct. 2007).

"[T]he mode of pleading defamation is governed by Rule 8,
Fed. R. Civ. P."  Kelly v. Schmidberger, 806 F.2d 44, 46 (2d
Cir. 1986) (citation omitted).  Nonetheless, a complaint must

---

[2]     Even if one were to construe Atkins's defamation claim to
include the written statements Bohrer has made in the probate
litigation, such a claim would be barred by the absolute
litigation privilege, as noted below.  See Kelly v. Albarino,
485 F.3d 664, 665-66 (2d Cir. 2007) (per curiam).

afford a defendant "sufficient notice of the communications
complained of to enable it to defend itself." Reilly v. Natwest
Markets Group Inc., 181 F.3d 253, 271 (2d Cir. 1999) (citation
omitted).  Courts in this Circuit have determined that "a
pleading is only sufficient if it adequately identifies the
purported communication and provides an indication of who made
the communication, when it was made, and to whom it was
communicated." See, e.g., Biomed Pharm., Inc. v. Oxford Health
Plans (N.Y.), Inc., 775 F. Supp. 2d 730, 739 (S.D.N.Y. 2011)
(citation omitted).

A.   Slander Claim that Survives the Motion to Dismiss

Some parts of Atkins's claim meet this standard and cannot
be dismissed.  In particular, the first, second, and third sets
of allegations identified above -- Bohrer's (1) accusations to
named individuals, including Ilene Wechter, Barbara Koplin, and
Penelope Weld, that Atkins was a thief and a liar; (2)
accusations to the apartment management staff that Atkins was
stealing Lynn's money and jewelry; and (3) accusations to
hospital staff that Atkins forged Lynn's healthcare proxy; --
are sufficiently pled.  For those allegations, and within the
context of the Amended Complaint which helps indicate the
approximate time of the alleged slanderous statements, Bohrer
has sufficient notice and information to determine which
discovery she requires for her defense against those

17

allegations.   Although the allegations that Lynn made
accusations to apartment management staff and hospital staff do
not name specific individuals, the potential universe of persons
to which these allegations refer is small, and can easily be
narrowed further in the context of other facts in the Amended
Complaint.

Bohrer argues that the Amended Complaint lacks the
specificity required to determine whether any of the alleged
defamatory comments are barred by New York's one-year statute of
limitations for defamation claims.   But within the context of
the Amended Complaint, it appears that all of the alleged
statements were made in fall 2010 and 2011 -- in other words,
all within one year of July 19, 2011, when the original
complaint was filed in this action.   For many of the defamation
allegations, the timing is described with even greater
specificity.   Thus, these may not be dismissed as time-barred at
the pleading stage.

Bohrer also contends that Atkins has not sufficiently pled
that the alleged statements have caused either special harm or
constitute slander per se.   Bohrer mistakenly asserts that a
statement can only be slander per se if it "tends to disparage a
person in the way of his office, profession or trade."   But
there are four types of per se defamatory statements for which
no special damages need be asserted:   statements that (i) charge

18

a plaintiff with a serious crime; (ii) tend to injure another in his or her trade, business or profession; (iii) a plaintiff has a loathsome disease; or (iv) impute unchastity to a woman. Zherka v. Amicone, 634 F.3d 642, 645 n.6 (2d Cir. 2011).  The alleged accusations that Atkins is a thief, has stolen Lynn's money and jewelry, or that he forged healthcare documents all charge him with a serious crime.  Because these statements constitute slander per se, Atkins need not plead special damages.

Finally, Bohrer argues that the defamation claim, like the elder abuse and harassment claim, should be barred under the doctrine of claim preclusion.  In support of this argument, Bohrer makes the conclusory statement that the defamation claim could have been brought in the same action as the harassment claim.  But § 3 explicitly states that an individual seeking emergency relief under Chapter 258E is not precluded from filing a separate action seeking alternative relief.  This may be especially true here, when that plaintiff seeks relief for tortious behavior not covered by Chapter 258E.  Therefore, the principle of claim preclusion does not bar Atkins's defamation claim from being brought in this Court.

B.   Allegations that Fail as Insufficiently Pled

The remaining allegations fail to meet the required pleading standard or do not plead all the required elements of a

defamation claim.  The fourth set of allegations, which plead some content of the allegedly slanderous statements, but identify the recipients merely as "others," and the fifth set, which identify Flo Doukova and Michiyo Nakaya as the recipients of slanderous statements but which categorize those statements conclusorily as "defamatory statements," are not plead with sufficient specificity to give Bohrer notice of the allegations she must defend against.  Therefore, these must be dismissed.

C.   Alleged Defamatory Statements Protected by Privilege

The sixth set of allegations -- the accusations that Atkins was stealing Lynn's money and jewelry that Bohrer allegedly made to Lynn, Wohl, and Lynn's son and attorney -- as well as the seventh set of allegations -- that Bohrer has slandered Atkins through the litigation instituted against him -- are privileged and so not actionable.  In both New York and Massachusetts, there is an absolute privilege for statements made in connection with litigation.  Kelly, 485 F.3d at 665-66; Frazier v. Bailey, 957 F.2d 920, 932 (1st Cir. 1992).  The scope of this privilege covers communications both in court and filed documents and also in "every step of the proceeding in question even if it is preliminary and/or investigatory and irrespective of whether formal charges are ever presented." Herzfeld & Stern v. Beck, 572 N.Y.S.2d 683, 685 (App. Div. 1991).  Both states also recognize a qualified privilege for "communication[s] made by

one person to another upon a subject in which both have an interest." Chandok v. Klessig, 632 F.3d 803, 815 (2d Cir. 2011) (citation omitted); see Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 47 (1st Cir. 2002).

Bohrer, as a co-trustee of Lynn's trust and co-executor of Lynn's estate, has litigation pending against Atkins, and therefore absolute immunity for any otherwise-defamatory statements she may have made in connection with that litigation. This includes not just documents filed in court in connection with that litigation, but also communications made to Wohl and Lynn's attorney and son, as they are all involved in these matters. In the Amended Complaint, it appears that the statements at issue to those individuals were all made in connection with contemplated or pending actions against Atkins. Indeed, Bohrer spoke to Lynn's attorney about her concerns as early as October 2010. Furthermore, Bohrer has a common interest in preserving the assets of the trust and the estate, meaning that she has an interest in common with Wohl and Lynn's son and attorney. Thus, her communications to those individuals are also not actionable under the common interest privilege.

Atkins contends that the litigation and common interest privilege should not apply to any of the allegations of slander in his Amended Complaint. First, he argues that Bohrer had no interest in common with other parties prior to Lynn's death, or,

alternatively, prior to Bohrer's appointment as co-executor of
Lynn's estate by the probate court.  This ignores the fact that
Bohrer was named in Lynn's will as a beneficiary and co-executor
of her will, and as co-trustee of the trust Lynn had
established.  Through these legal relationships, Bohrer had an
interest in Lynn's estate and assets even prior to the time when
she could act on those interests in her official capacity.
Therefore, viewed within the context of the timing -- a time
when her mother's health was failing rapidly -- and her
interlocutors -- Wohl and Lynn's attorney and son -- her
inquiries into Atkins's actions took place in contemplation of
the common interest in preserving the estate, carrying out
Lynn's wishes as stated in her will and trust documents, and
contemplating actions to enforce those stated wishes.

Second, Atkins argues that Lynn never intended for Bohrer
to share in any common interest with others concerning her
estate, as she had intended for Bohrer to be removed from her
will and trust documents.  But Atkins acknowledges that whatever
Lynn's intention might have been, Bohrer was never removed from
those documents, and after Lynn's death she did indeed become a
co-executor and co-trustee pursuant to documents executed by
Lynn.  Any litigation or common interest privilege does not
depend on Lynn's unexecuted intentions, but are instead created

by the actual interests and actions of Bohrer and her
interlocutors.

IV.  Subject Matter Jurisdiction

       This action was properly filed in this court because there
is diversity jurisdiction under 28 U.S.C. § 1332; the Amended
Complaint states that Bohrer and Atkins are citizens of
different states, and Atkins pled compensatory damages for his
defamation claim over the $75,000 threshold.  Specifically,
Atkins pled that he has suffered financial harm and seeks
compensatory damages because he was required to disclose the
litigation Bohrer has instituted against him, and this
disclosure has damaged his business.  As noted above, Atkins's
defamation claim is not actionable on the basis of Bohrer's
litigation against him, as any defamatory statements made in
connection with litigation, including the fact of the litigation
itself, is covered by the absolute litigation privilege.  Even
though this prong of Atkins's defamation claim has been
dismissed, subject matter jurisdiction over this lawsuit
remains.  Courts "measure the amount in controversy as of the
date of the complaint.  Once jurisdiction has attached, it
cannot be ousted by subsequent events." Scherer v. Equitable
Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003).

CONCLUSION

Bohrer's November 8, 2011 motion to dismiss is granted in part. Atkins's elder abuse and harassment claim is dismissed, but part of his defamation claim survives, as described above. Atkins's request in his opposition brief for leave to amend his Amended Complaint is denied. Atkins had already been given an opportunity to amend his pleadings, and he took advantage of that opportunity.

SO ORDERED:

Dated:   New York, New York
         December 23, 2011

                              _____
                                   DENISE COTE
                              United States District Judge

COPIES MAILED TO:


Lewis L. Atkins
16 Shelley Terrace
West Orange, NJ 07052


Richard Henry Dolan
Schlam Stone & Dolan LLP
26 Broadway
New York, NY 10004